UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DENNIS FEITOSA,

        Plaintiff,

v.                                                                 Civil Case No. 1:22-cv-00377

DANIEL M. KEEM,

        Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

**HARTER SECREST & EMERY LLP**
Michael Damia, Esq.
Sheldon K. Smith, Esq.
Jeffrey A. Wadsworth, Esq.
*Attorneys for Defendant Daniel M. Keem*
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
Telephone: (716) 853-1616
Fax: (716) 853-1617
mdamia@hselaw.com
ssmith@hselaw.com
jwadsworth@hselaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT  ...................................................................................................1

RELEVANT FACTS  ................................................................................................................1

STANDARD OF REVIEW ........................................................................................................5

ARGUMENT ...........................................................................................................................6

I.      THE COMPLAINT MUST BE DISMISSED BECAUSE THE SUBJECT TWEET IS NOT OF AND CONCERNING FEITOSA..........................................6

II.     THE COMPLAINT MUST BE DISMISSED BECAUSE UNDER THE TOTALITY OF CIRCUMSTANCES, THE SUBJECT TWEET IS NOT REASONABLY SUSCEPTIBLE OF AN INTERPRETATION THAT IMPLIES THAT THE TWEET WAS STATING A MATTER OF FACT.............................9

III.    THE COMPLAINT MUST BE DISMISSED BECAUSE FEITOSA HAS NOT PLAUSIBLY ALLEGED DAMAGES IN EXCESS OF $75,000 TO MEET THE AMOUNT-IN-CONTROVERSY THRESHOLD FOR SUBJECT MATTER JURISDICTION IN THIS COURT ...................................13

CONCLUSION ......................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*13391 Broadway LLC v. Vill. of Alden*,
 2020 U.S. Dist. LEXIS 222942 (W.D.N.Y. Nov. 30, 2020) ......................................................1

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................................5, 6

*Blatty v. New York Times Co.*
 42 Cal. 3d 1033, 232 Cal Rptr. 542 (1986)...............................................................................7

*Dickenson v. Crosby*,
 37 Cal. App.5th 1138, 250 Cal. Rptr. 3d 350 (2019)................................................................7

*Ganske v. Mensch*,
 480 F. Supp. 3d 542 (S.D.N.Y. 2020).......................................................................................7

*Info. Control Corp. v. Genesis One Computer Corp.*,
 611 F2d. 781 (9th Cir. 1995) .................................................................................................9, 10

*Jackson v. Mayweather*,
 10 Cal. App.5th 1240, 217 Cal Rptr. 3d 234 (2019).................................................................7

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir, 2005) ...................................................................................................9

*Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*,
 2016 US Dist. LEXIS 56601 (S.D.N.Y. 2016)........................................................................12

*Milkovich v. Lorain Journal Co.*,
 497 U.S. 1 (1990).......................................................................................................................9

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964)...................................................................................................................7

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
 302 F. Supp. 3d 1005 (N.D. Cal 2017) ......................................................................................9

*Satan Wears Suspenders, Inc. v. Jaar*,
 2022 U.S. Dist. LEXIS 107889 (S.D.N.Y. June 16, 2022)....................................................1, 2

*Steam Press Holdings, Inc. v. Hawaii Teamsters*,
    302 F. 3d 998 (9th Cir. 2002) ........................................................................................12

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ......................................................................................10

*Torain v. Liu*,
    NO. 06 Civ. 5851 (GBD), 2007 WL2331073 (S.D.N.Y.) ..........................................12

*Torain v. Liu*,
    279 F. App'x 46 (2d Cir. 2008) ...................................................................................12

*Underwager v. Channel 9 Austl.*,
    69 F.3d 361,366 (9th Cir. 1995) ....................................................................................9

*Weir v. Cenlar FSB*,
    No. 16-CV-8650 (CS), 2018 U.S. Dist. LEXIS 118844 (S.D.N.Y. July 17, 2018)...............13

*Wood v. Maguire Auto. LLC*,
    No. 09-CV-0640, 2011 U.S. Dist. LEXIS 109293 (N.D.N.Y. Sept. 26, 2011), *aff'd*,
    508 F. App'x 65 (2d Cir. 2013) ...................................................................................13

*Xuejie He v. Trinity Church*,
    2018 U.S. Dist. LEXIS 242842 (S.D.N.Y. Nov. 6, 2018) ..........................................13

**STATUTES**

Cal. Civ. Code §45a.............................................................................................................6

Fed. R. Civ. P. 8(a)(2)..........................................................................................................5

ii

**PRELIMINARY STATEMENT**

On May 19, 2022, Plaintiff Dennis Feitosa ("Feitosa") filed a complaint against

Defendant Daniel M. Keem ("Keem") claiming that Keem defamed him in a Twitter post a year

earlier, dated May 21, 2021 ("the subject Tweet").  The subject Tweet was "of and concerning" a

fictional comedic character named "Def Noodles" that Feitosa had created solely for

entertainment and joking purposes as a YouTube broadcaster and social media personality.  The

Def Noodles character is known for its repeated disclaimers that everything about it is meant to

be a joke and for providing satirical commentary about other social media personalities.  The

character is a frequent critic of Keem and others.

Pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, Keem

moves to dismiss the complaint for failure to state a claim and for lack of subject matter

jurisdiction.  The complaint should be dismissed because (i) the comment about the Def Noodles

character does not defame "Feitosa" as a matter of law; (ii) in context, the subject Tweet was

obviously made in response to the war of words, mocking, and offensive tweets that the Def

Noodles character repeatedly hurled toward Keem; and (iii) Feitosa pleads no actual damages,

reputationally or otherwise, and does not meet the amount-in-controversy required for this Court

to entertain the lawsuit.

**RELEVANT FACTS[1]**

Plaintiff Dennis Feitosa is a 27 year-old comedian who has created a fictitious, comedic

character named "Def Noodles."  (Dkt. 1, ¶7).  Feitosa has admitted and explained in publicly

---

[1] The relevant facts include allegations from the complaint, which for the purposes of this motion only are assumed, where plausible, to be true, as well as those facts that may be judicially noticed under Fed. R. Evid. 201.  *See Satan Wears Suspenders, Inc. v. Jaar*, 2022 U.S. Dist. LEXIS 107889, *7 n.6 (S.D.N.Y. June 16, 2022); *13391 Broadway LLC v. Vill. of Alden*, 2020 U.S. Dist. LEXIS 222942, *2 n.1 (W.D.N.Y. Nov. 30, 2020).

available internet posts that "Def Noodles is a show I created.  It's a mix between 'The Soup'

and 'The Colbert Report', a satirical take on Internet news commentary hosted by a cat in a

Minecraft house."  (See social media post attached to the accompanying Declaration of Sheldon

K. Smith as Ex. 1).[2]  In a companion disclaimer post, Feitosa further explained that Def Noodles

> is a character… meant to satirize some of the most deranged, toxic and destructive
> aspects of  Internet Culture.  Def Noodles borrows from Twitter outrage, modern-
> day commentary cynicism, excessive clickbait, trolling, buzzword hacking, cancel
> culture and outright pandering to righteous indignation to reflect on the realities of
> contemporary social media interactions and media coverage.  The opinions and
> thoughts expressed by Def Noodles are not a reflection of Dennis Feitosa's
> beliefs.

(Smith Decl., Ex. 1).

In a March 4, 2021 publicly available interview on Jesse David Fox's podcast, Feitosa

noted that his Def Noodles character wears cat ears, eyeglasses without lenses, and UCLA t-

shirts, while broadcasting YouTube videos in a comedic voice against a Minecraft house

(cartoon-like) backdrop.  (See link to Jesse David Fox "Good One: A Podcast About Jokes" from

March 4, 2021 contained in Smith Decl., Ex. 2).  Feitosa described how "the whole like cat-boy,

cat-guy, whatever persona" came about and that Def Noodles is separate, alter-ego vehicle for

doing a "satirical … commentary on internet news and things that are happening on social

media."  Feitosa joked about the Def Noodles character being mocked by competitors and others,

saying "**[t]hey're attacking this character, who's a fictional cat in a Minecraft house, who**

**just doesn't exist…"**.  (emphasis added) (Smith Decl., Ex. 2).

---

[2] The Declaration of Sheldon K. Smith, dated August 4, 2022 and filed herewith, is referred to herein as the "Smith Decl."  The Court may take judicial notice of prior public social media/internet postings by Plaintiff (and the Def Noodles character) because they are not subject to reasonable dispute and are publicly available.  *See*, *e.g.*, *Satan Wears Suspenders, Inc.*, 2022 U.S. Dist. LEXIS 107889, *7 n.6.

When confronted during the podcast interview about a Def Noodles post saying that Def Noodles had "reached out for comment" to a social media personality concerning a story, Feitosa admitted that the post was fake (because the cat character is fake) and that comment was never sought from the personality.  Feitosa also admitted during the podcast that Def Noodles has made other posts that "are not real."  Feitosa told the interviewer "[i]t is all meant to be a joke.  I am not a journalist."  (Smith Decl., Ex. 2).

Feitosa has explained that the Def Noodles character seeks to sensationalize, dramatize, and criticize other "YouTubers" and social media influencers to create controversy that might attract more subscribers and social media followers.  He has repeatedly admitted (disclaimed) that "**everything**" the Def Noodles character did and said "was meant to be a joke" and always "satirical."  (emphasis added).  *See* Def Noodles' tweets at Exhibits 12-15 to Smith Decl. ("The glasses. The last thing I'll say because I don't want to lift the curtain like the Wizard.  It has no lenses.  It's meant to be a funny joke too lol…Everything I do is meant to be a joke."); ("This page is satirical, meaning it's not meant to be taken seriously.  Tone is overly serious because it's meant to be satirical.  I have a segment on my YT that accompanies the Twitter coverage titled "Irrelevant News" because none of this is meant to be important."); ("THIS PAGE IS SATIRE. WHETHER YOU GET IT OR NOT, EVERYTHING I DO IS A JOKE.") (emphasis in original); and ("Maybe you haven't followed me long enough, but literally everything I post is a joke.").

Defendant Daniel Keem is another so-called YouTuber, broadcasting under the name "Keemstar."  Keem was an early entrant in the emerging YouTube forum and provides commentary on the other YouTubers and social media Influencers. (Dkt. 1, ¶ 8).  Within this relatively-small, insular universe, comedians, entertainers, gamers, and influencers post salacious

and often-controversial content about each other and others with the hope of generating reactions among those who follow them and getting more clicks, subscribers, and/or followers.

In this case, Feitosa alleges that Keem defamed him based on a May 21, 2021 tweet sent from Keem's Twitter account that stated as follows:

> *Def Noodles has allegedly groomed girls from ages 12-15.*
> *Big YouTuber Source: "Victims are scared of him and wish to stay anonymous but may come forward soon"*
> *Def Noodles has declined to give us a comment on these allegations made against him.*

(Dkt. 1, ¶ 10 ("the subject Tweet")).

The subject Tweet does not reference Feitosa. It is aimed at the Def Noodles character that routinely mocks and attacks other YouTubers using "allegedly" caveats in phrasing and fake sources and, importantly, it follows as part of a long-running volley of insults and claimed satirical rants specifically posted by the Def Noodles character toward Keem. Indeed, in the three days leading up to Keem's posting the subject Tweet, Def Noodles posted publicly available tweets accusing Keem of "allegedly" engaging in a variety of bad acts:

- May 18, 2021 post:   "These Skype messages show two people discussing Keemstar **allegedly** having the 15-year-old girl get naked on stream, as well as the streamer Cupcake." (emphasis added)

  (Smith Decl., Ex. 3).

- May 19, 2021 tweet:  "Keemstar **allegedly** abusing his girlfriend in resurfaced video. Keemstar **allegedly** yells at his girlfriend, we hear screams and shouts, and the mic cuts out at one point. She later pleads with Keemstar, "Stop it, you psycho." (emphasis added)

  (Smith Decl., Ex. 4).

- May 20, 2021 post:   "THIS IS MESSED UP: Keemstar **allegedly** bullied an 8 year old special needs child on Twitter and when confronted about it allegedly said if he didn't do it, then someone else would." (emphasis added)

  (Smith Decl., Ex. 5).

4

After Keem posted the subject Tweet, the back and forth internet/social-media banter continued, with the Def Noodles character posting several additional tweets that were demeaning and personally offensive toward Keem:

- May 31, 2021 post: "2ND HAND EMBARRASSMENT: Keemstar tries to leech off Adin Ross by inserting himself into Aidin's beef with Ludwig and Sodapoppin. Immediately gets destroyed by entire Twitch and gaming communities."

  (Smith Decl., Ex. 6).

- June 21, 2021 post:   "David Dobrik EXPOSED, Keemstar EMBARRASSES HIMSELF, Cody Ko EXPOSES Soulja Boy, Logan Paul SLAMS Jake   NEW YOUTUBE VIDEO"

  (Smith Decl., Ex. 7).

- June 27, 2021 post:   "Meanwhile, Keemstar: Scammed fans with crypto currencies (**allegedly**)" (emphasis added)

  (Smith Decl., Ex. 8)

- June 30, 2021 post:   "Keemstar is a known liar. He's a r*pe apologist. He's an infamous racist and anti-semite."

  (Smith Decl., Ex. 9)

- July 1, 2021 post:     "VERY SCIENTIFIC STUDY: Is Keemstar a…Scammer 1.4%, Liar 1.5% Racist 2.1% All Of The Above 95%"

  (Smith Decl., Ex. 10).

This is the YouTube and social media context in which Keem and the Def Noodles character were operating at the time of the subject Tweet.

### STANDARD OF REVIEW

Rule 8 requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although Rule 8 "does not require detailed factual allegations"…it [does] demand more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.  *Id. (quoting Twombly,* 550 U.S. at 557).

The Court is not required to accept any legal conclusions in the complaint as true.  *Id. at* 578.  Similarly, a legal conclusion couched as a factual allegation need not be accepted.  *Id.*

To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter," accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim is plausible on its face when the pleaded factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *See Ashcroft v. Iqbal*, 556 U.S. at 678.  "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'"  *Id.* at 677-679.

### ARGUMENT

**I.      THE COMPLAINT MUST BE DISMISSED BECAUSE THE SUBJECT TWEET IS NOT OF AND CONCERNING FEITOSA**

Feitosa brings a single cause of action for libel *per se.*  (Complaint, ¶¶ 23-29).

In California, "[a] libel which is defamatory **of the plaintiff** without the necessity of explanatory matter, such as inducement, innuendo or other fact, is said to be libel on its face."  Cal. Civ. Code §45a (emphasis added).[3]  The elements of a defamation claim are (i) a publication

---

[3] Feitosa alleges that California substantive law applies in this case, given his alleged domiciliary in Los Angeles.  For purposes of this motion to dismiss, Defendant assumes, without conceding and while reserving all rights, that California law applies to Feitosa's libel claim.  Analysis of the instant motion under New York law would be the same as both jurisdictions apply a totality of circumstances test.  To distinguish between a statement of fact and opinion, New York courts apply a similar three-part test as California: (1) whether the specific language in issue has a

that is (ii) false, (iii) defamatory, (iv) unprivileged, and (v) has a natural tendency to injure or causes special damage. *See Jackson v. Mayweather*, 10 Cal. App.5th 1240, 1259, 217 Cal Rptr. 3d 234 (2019). "The defamatory statement must specifically refer to, or be 'of and concerning' the plaintiff." *Id*. at 1260.

Accordingly, if the words are not "of and concerning" the plaintiff, then the plaintiff has no cause of action as a matter of law. To satisfy the requirement, the plaintiff has the burden to plausibly plead and show that the statement expressly mentions him or refers to him by reasonable implication. *See Blatty v. New York Times Co*. 42 Cal. 3d 1033, 1044, 232 Cal Rptr. 542 (1986), citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (finding that allegedly defamatory statements in an advertisement were not "of and concerning" plaintiff where there was no specific reference to the plaintiff in the advertisement).

To consider whether an alleged defamatory statement is of and concerning a plaintiff, the California courts consider the totality of circumstances. *See Dickenson v. Crosby,* 37 Cal. App.5th 1138, 1160, 250 Cal. Rptr. 3d 350 (2019). This requires examination of the "nature and full content of the communication and…the knowledge and understanding of the audience to whom the publication was directed." *Id.*

Here, the alleged defamatory statement, on its face and as pleaded in the complaint, is not "of and concerning" plaintiff Dennis Feitosa, as a matter of fact or law. Indeed, the subject Tweet does not mention him at all. Rather, the subject Tweet is of and concerning a fictitious

---

precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context of and surrounding circumstances are such as to signal readers that what is being read is likely to be opinion, not fact. *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 552 (S.D.N.Y. 2020).

7

internet cat character, "Def Noodles," which exists solely as a comedic instrument for generating jokes and satirical commentary.  (Smith Decl., Exs. 1 and 2, and 12-15).

"Def Noodles" is not synonymous with Feitosa, as Feitosa has repeatedly admitted, disclaimed, and emphasized.  Def Noodles is a separate, outlandish, comedic character developed to satirically criticize, mock, and otherwise attack other social media personalities – and to *be mocked and attacked in response*.  In his own description of this created character, Plaintiff has written that Def Noodles is "a satirical take in Internet news commentary hosted by a cat in a Minecraft house."  (Smith Decl., Ex. 1).  In discussing the Def Noodles character and the cat's satirical commentary during the March 4, 2021 podcast, Plaintiff justified posting jokes and fake information because, "at the end of the day, if it entertains, that's what really counts." (See link to Jesse David Fox Podcast interview of Feitosa contained in Smith Decl., Ex. 2).

The subject Tweet was about the fabricated, to-mock-and-be-mocked, never-serious, *everything*-is-a-joke character Def Noodles and was a direct response to the character's earlier series of postings on Twitter and YouTube in which it claimed that Keem had "allegedly" engaged in various bad acts.  The photo contained within the subject Tweet is of the host character "Def Noodles," complete with the pointy cat ears, funny looking eyeglasses, and UCLA t-shirt. (Dkt. 1, ¶10).

Not only does the subject Tweet not name or reference Dennis Feitosa, there are no plausible allegations in the complaint that the subject Tweet refers to Feitosa by implication.  As such, the subject Tweet did not say anything negative or factual about Plaintiff Dennis Feitosa and it was not "of and concerning" him.  Dismissal is warranted because Feitosa was not defamed as a matter of law.

8

II.     **THE COMPLAINT MUST BE DISMISSED BECAUSE UNDER THE TOTALITY OF CIRCUMSTANCES, THE SUBJECT TWEET IS NOT REASONABLY SUSCEPTIBLE OF AN INTERPRETATION THAT IMPLIES THAT THE TWEET WAS STATING A MATTER OF FACT**

The subject Tweet is "shielded by the First Amendment as a statement that is 'not provable as false' or a statement that 'cannot reasonably be interpreted as stating actual facts.'" *Resolute Forest Prod., Inc. v. Greenpeace Int'l,* 302 F. Supp. 3d 1005, 1020 (N.D. Cal 2017) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990). To determine whether a statement is a fact or opinion for purposes of First Amendment protection, courts engage in a context-driven inquiry considering the totality of the circumstances in which the statement was made. *See Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir, 2005).

Whether an allegedly defamatory statement is a fact or opinion is ordinarily a question of law for the court. *Id.* at 1074. To determine "whether a reasonable factfinder could conclude that the contested statement implies an assertion of fact" or is instead nonactionable opinion, courts applying California law follow a three-factor test. *Id.* at 1075. This test, too, examines the "totality of the circumstances" in which the allegedly defamatory statement was made. *Underwager v. Channel 9 Austl.*, 69 F.3d 361,366 (9th Cir. 1995).

First, courts "look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Id.* Next, courts "turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in the particular situation." *Id.* Finally, courts "inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false. *Id.*

Consideration must be given to all the words used, not merely a particular phrase or sentence. *See Info. Control Corp. v. Genesis One Computer Corp.*, 611 F2d. 781, 784 (9th Cir.

9

1995).  Courts must also "give weight to cautionary terms used" and consider "all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." *Id.*

Here, even putting aside the fact that it was in response to and toward a fictional-always-a-joke cat character, the context of the subject Tweet demonstrates that it is not actionable under the three-part test.  Part one of the test is to consider the tweet in its broad context.  This requires a look at the general tenor of the entire work, the subject, and the setting and format.  The setting and format is Twitter, a platform replete with opinions, light on facts, and lacking in tone and clarity of statements.  *See e.g., Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (2012) (a reader "should be predisposed to view [statements made on an unmoderated internet forum] with a certain amount of skepticism, and with an understanding that they will likely present one-sided viewpoints rather than assertions of provable fact").  The broad context of the subject Tweet involves consideration of the industry in which the parties work.  As alleged in the complaint, the parties are "YouTube personalit[ies]" in the "social media influencer industry." (Dkt. 1, ¶¶ 7, 8, 9).  Both the Def Noodles character and Keem purport to provide news and opinions on the social interactions in the narrow online entertainment community, but also, as rivals, at times trade social media jabs.  (*See* Def Noodles' offensive and demeaning tweets about Keem at Smith Decl. Exhibits 3-10).

The broader context reveals that the content of the subject Tweet is not actionable and was merely part of a larger war of words, with specific phrasing, between Def Noodles (not Feitosa) and Keem.  What both Keem and Def Noodles say on YouTube or post on Twitter consists of various mixtures of entertainment, news, satire, gossip, and sophomoric insults hurled towards each other.  As outlined above, Plaintiff has repeatedly admitted and represented

10

publicly that "literally everything" the Def Noodles character says and does is a joke and that "none" of it can be taken seriously. (*See* Smith Decl., Exs. 12-15). This is the culture known and understood by the social media followers of the personalities.

The second part of the test involves consideration of the narrower context and content of the statement, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in the particular situation. The specific content of the subject Tweet is brief, merely three lines. It purports to be a report on an allegation made by a "Big YouTuber Source" (mocking Def Noodles for previously admitting to have fake sources) that Def Noodles allegedly groomed girls. The statement parrots the cautionary language "allegedly" – which is a known signature disclaimer of Def Noodles and how the Def Noodles character couched each of its demeaning tweets about Keem in the three consecutive days (May 18th, May 19th, and May 20th) immediately preceding the May 21st responsive subject Tweet.[4] The subject Tweet also mimics the "reached out for comment" line that the Def Noodles character has admitted to using *falsely* in the past. (Smith Decl., Ex. 2). The reference to "Big YouTuber Source" further highlights that Keem is poking fun, in kind, at the Def Noodles character and consistent with the joking/mocking environment in which they are operating – not stating serious facts.

The subject Tweet makes no accusation of acts of a sexual nature. There is no accusation of specific criminal conduct. The context is that the subject Tweet is a "mock" of prior fake stories and in response (in kind) to posts made over the three preceding days by the Def Noodles character, in which it repeatedly used "allegedly" to frame the comments about Keem. Further, the comments referenced in paragraph 13 of the complaint do not establish that the readers did

---

[4] The audience who knew of fuller contexts understood as much. For example, one commenter on Keem's subject Tweet wrote "It's a joke…he's making fun of how def noodles says all kinds of outrageous things with no Evidence and always says 'allegedly'." (Smith Decl., Ex. 11).

not get the joke, particularly the audience with familiarity and context.  The subject Tweet was obviously one of the back-and-forth exchanges between Keem and "Def Noodles" in the attention-seeking, satirical environment of social media news and comedy.  Indeed, following the subject Tweet, Def Noodles continued with outrageous, false, and offensive tweets about Keem. (Smith Decl., Exhibits 3-10).  And in more context, this was all part of a war of words with a "cat in a Minecraft house" character – an alter ego that was expressly created and existing to generate mocking comments in a satirical environment where "literally everything" was a joke.

A complaint involving direct and serious statements of and concerning a person (not a made-up character) with more substantive and demeaning comments was dismissed in *Torain v. Liu,* NO. 06 Civ. 5851 (GBD), 2007 WL2331073 (S.D.N.Y.).  There, the defendant, among other things, called the plaintiff a "racist pedophile" after the plaintiff, a radio disk-jockey, made statements concerning the young daughter of a disk-jockey on a rival station.  The Second Circuit affirmed the District Court's dismissal of the complaint, granting the defendant's 12(b)(6) motion and holding that the defendant's statements were made during a "war of words" and were, in proper context, not "assertions of objective fact." *Torain v. Liu*, 279 F. App'x 46, 48 (2d Cir. 2008); *see also Steam Press Holdings, Inc. v. Hawaii Teamsters*, 302 F. 3d 998, 1006 (9th Cir. 2002) ("a 'heated and volatile setting' may make 'seemingly factual' statements take on an appearance more closely resembling opinion than objective fact").

Here, dismissal is warranted for the same reasons.  Furthermore, the statement itself is not sufficiently factual to be susceptible of being proved true or false.  "Allegedly groomed" lacks detailed facts, and the word "groomed" itself is imprecise and has different meanings. Words have been characterized as "imprecise" when "they may mean different things to different people" and cannot be proved true or false because of their "subjective, relative meanings." *Live*

*Face on Web, LLC v. Five Boro Mold Specialist Inc.,* 2016 US Dist. LEXIS 56601 (S.D.N.Y. 2016).

The reasonable expectations of the audience, in context regarding this medium, the "influencer" industry, where "literally everything" is a joke and with the always-satirical admissions and disclaimers, and the war of words (with in-kind phrasing) going on at that specific time involving a satirical feline "character" set in a cartoon Minecraft house, precludes a reasonable person from seeing the subject Tweet as a statement of objective fact about Feitosa. In commencing this action, Plaintiff is playing hypocritical, petty, and "click-bait" games here, which should not be countenanced by this Court.

**III.    THE COMPLAINT MUST BE DISMISSED BECAUSE FEITOSA HAS NOT PLAUSIBLY ALLEGED DAMAGES IN EXCESS OF $75,000 TO MEET THE AMOUNT-IN-CONTROVERSY THRESHOLD FOR SUBJECT MATTER JURISDICTION IN THIS COURT.**

Feitosa seeks to invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Nowhere in his Complaint, however, does Feitosa allege any actual, compensatory, or special damages to meet the amount-in-controversy requirement.  He offers the conclusory allegation that "his reputational injuries exceed $75,000.00" (Dkt. 1, ¶ 28), but does not allege any facts to support that conclusory allegation or to show its plausibility.  *See Xuejie He v. Trinity Church*, 2018 U.S. Dist. LEXIS 242842, at *11 (S.D.N.Y. Nov. 6, 2018) ("where a complaint does not contain facts plausibly suggesting that the amount in controversy meets the jurisdictional minimum, the Court is not required to presume that the bare allegations in the complaint are a good faith representation of the actual amount in controversy"); *Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 U.S. Dist. LEXIS 118844, at *34-35 (S.D.N.Y. July 17, 2018) ("the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible"); *Wood v. Maguire Auto. LLC*, No. 09-

13

CV-0640, 2011 U.S. Dist. LEXIS 109293, at *2 (N.D.N.Y. Sept. 26, 2011) ("[T]his face-of-the-complaint presumption is available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy."), *aff'd*, 508 F. App'x 65 (2d Cir. 2013) (summary order).

Indeed, Feitosa does not allege any loss of income or other economic harm, nor does he allege a loss of YouTube subscribers or social media followers. Accordingly, this Court can dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. *See id.* ("[I]in the event the complaint does not allege, on its face, facts plausibly suggesting that the amount in controversy exceeds the jurisdictional minimum, the court need not presume that the general allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good faith representation of the actual amount in controversy.").

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion to Dismiss the complaint with prejudice.

Dated: August 5, 2022

HARTER SECREST & EMERY LLP

By: s/ Sheldon K. Smith
Michael Damia, Esq.
Sheldon K. Smith, Esq.
Jeffrey A. Wadsworth, Esq.
*Attorneys for Defendant Daniel M. Keem*
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
Telephone: (716) 853-1616
Fax: (716) 853-1617
mdamia@hselaw.com
ssmith@hselaw.com
jwadsworth@hselaw.com

14

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

s/ Sheldon K. Smith

15