UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS FEITOSA, | AMENDED COMPLAINT |
| Plaintiff, | Civil Case No. |
| v. | 1:22-cv-00377 |
| DANIEL M. KEEM, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff, Dennis Feitosa ("Feitosa" or "Plaintiff"), through his attorneys, Bond, Schoeneck & King, PLLC, complains of the Defendant Daniel M. Keem ("Defendant" or "Keem") as follows:

## NATURE OF THE ACTION

This action arises out of Defendant's entirely fabricated statements that underage girls accused Plaintiff of "grooming" Plaintiff's "victim", which gave the clear implication that Plaintiff was engaged in pedophilic activities or was the subject of accusations of engaging in pedophilic grooming. Defendant has since admitted these were complete fabrications.

## PARTIES

1. Plaintiff is a natural person domiciled in Los Angeles, California.

2. Defendant is a natural person domiciled in the Eastern District of New York. He may be served with process at 190 Curley Dr, Orchard Park, NY 14127.

**JURISDICTION AND VENUE**

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds seventy-five thousand dollars ($75,000), and the parties are citizens of different states, with Plaintiff being a citizen of California and Defendant being a citizen of New York.

4.      Personal jurisdiction and venue are predicated upon 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) since Defendant is a resident of the Western District of New York.

**CHOICE OF LAW**

5.       California substantive law applies to the claims brought by Plaintiff herein. First, both Plaintiff was a citizen of California at the time the defamatory statements were published.  Second, Defendant had knowledge that Plaintiff resided in California when he made the statements.  Therefore, Defendant knew the brunt of the harm would be felt in California.

**BACKGROUND**

7.      Plaintiff is a popular YouTube personality who posts and posted content under the handles "Def Noodles".  Plaintiff also posts and posted on his Twitter and other social media accounts under similarly titled handles.  Despite using the handle "Def Noodles" and despite being referred to colloquially as "Def Noodles" as a nickname for his show titles, persons familiar with Plaintiff knew/know and understood/understand references to "Def Noodles" as actually and, in fact, referring to Plaintiff Dennis Feitosa.  Moreover, on Plaintiff's YouTube channel, it clearly states that "My name is Dennis Feitosa and Def Noodles is a show I created." Plaintiff's Instagram and Twitter pages links viewers to the YouTube channel.  In short, the listening/viewing public do not view "Def Noodles" as distinct from Dennis Feitosa anymore

than they view "Mr. Beast", the world's leading YouTube personality, as distinct from Jimmy Donaldson, his real name.

8. Defendant is a popular YouTube personality who posts content under the name "KEEMSTAR". Defendant also posts on his Twitter and other social media accounts. Defendant had over 2.5 million followers on Twitter at the time of the conduct complained of herein.

9. Plaintiff and Defendant are direct competitors in the social media/influencer industry. Defendant has a history of posting factual claims regarding the entertainment industry in addition to other types of non-factual postings. On March 31, 2021, after apparently taking issue with a perceived alliance between Plaintiff and another social media personality, Ethan Klein, whom Defendant was unfriendly with, Defendant sent the following direct messages to Plaintiff on Twitter:

4





10. As is clear from the messages above, Defendant threatened "Dennis"–not a fictional character named "Def Noodles"—for the postings Plaintiff made on his social media. On May 21, 2021 on his verified Twitter account, Defendant made good on his profane threats and posted the following Tweet of and concerning Plaintiff the ("Tweet") to his over 2.5 million followers, which was hyperlinked directly to Plaintiff's Twitter handle, thereby pointing to Plaintiff, and no one else:



11. These statements were complete and utter fabrications. There were no allegations by any girls (underage or not) that Plaintiff had "groomed" them or otherwise engaged in inappropriate conduct of a sexual nature.

12. Moreover, contrary to Defendant's false claims, neither Defendant nor anyone acting on Defendant's behalf made any attempt to seek "comment" on the fabricated allegations. To the contrary, Defendant blocked Plaintiff on Twitter ensuring he would have no ability to publicly respond to Defendant's fabricated claims.

13. Those who read and commented on the Tweet clearly understood it as stating actual verifiable facts about Plaintiff. For example, the next day on May 22, 2021, a user with the Twitter handle "Memelin" responded to the Tweet and stated, "Showing them girls his little noodles". Another user with the handle "@ChrisMCYT" posted "so @defnoodles might be a pedophile?"

14. Plaintiff also received direct messages and tweets asking him to comment on the false allegations in the Tweet and expressing that they understood the Tweet to make the accusation that Plaintiff was the subject of allegations of grooming underage girls for sex and was involved in pedophilia. The day of the Tweet a user with the Twitter handle "alyssaxxy" tweeted "Hopefully MSM picks up on this. Can't have another pedo running around this platform".

15. Other tweets called for an "official investigation" and to "believe the victims". But the truth was, there was nothing to investigate, and there were no victims – not even alleged ones. Plaintiff received hundreds of messages that were harassing, threatening, and even included death threats. No one perceived the Tweet to be referring to a fictional character, but an actual person—Plaintiff—who they believed was the subject of actual allegations of sexual crimes against minors. And even though Defendant knew this, he still allowed his lies to spread like wildfire around social media while remaining silent.

16. Although Plaintiff tried to defend himself on his own accounts, his social media following was not as broad as Defendant's. His efforts were not able to ameliorate the harm done by Defendant's malicious disinformation campaign. As such, Plaintiff's reputation was injured *per se* because of false accusations of criminal conduct.

17. Plaintiff suffered a *per se* reputational injury as a result of the false and defamatory Tweet.

18. Apparently realizing that he was going to be sued for defamation, Defendant then engaged in an ill-fated and thinly veiled attempt to peremptorily argue that the Tweet everyone understood as a legitimate "report" regarding Plaintiff's "victims" of sex crimes. On February 5, 2022, he tweeted a confession wherein he admitted that the Tweet was a total fabrication (the "Confession"):



19. So, after seeing responses to the Tweet that took the Tweet seriously, Defendant—nearly eight months later—issued the confession claiming "everyone" knew it was a joke. But Defendant knew that people did not read it as a joke as evidenced by the responses to the Tweet. Defendant did nothing to clarify or correct that false statements in the Tweet until many months later after the damage had been done. Moreover, in Defendant's Confession Tweet he admits that the original Tweet was of and concerning Plaintiff Dennis Feitosa and not a fictional person because the "he" who is taking the false allegations seriously cannot be a fictional character – it is clearly Plaintiff.

20. Not only that, but in the Confession, Defendant doubled down on the false claim that Plaintiff had "declined" to comment to Defendant on the false allegations. In doing so, Defendant left open the possibility that Plaintiff's failure to address the "joke" allegations might mean perhaps there was a kernel of truth to the false allegations.

21. Although Defendant's Confession was a "jailhouse lawyer" attempt at immunizing himself from liability for defamation, in reality it constitutes conclusive evidence of his actual malice as to the truth of the Tweet along with the threatening messages Defendant sent prior to the Tweet.

22. Plaintiff now brings this action to recover actual, compensatory, and exemplary/punitive damages against Defendant.

## FIRST CAUSE OF ACTION

### (Libel *per se*)

23. Plaintiff repeats the allegations in paragraphs "1" through "22" above.

24. As described above Defendant made false statements of fact expressly and/or impliedly as follows:

    i. That there were actual underage girls in ages ranging from 12-15 who had accused Plaintiff of "grooming" them for illicit sexual purposes.

    ii. These girls were "victims", which implied that wrongful conducted had, in fact, been committed against these girls by Plaintiff of a criminal, pedophilic, and sexual nature;

    iii. These girls were "scared" of Plaintiff, suggesting that Plaintiff had threatened or coerced them into silence; and

    iv. Plaintiff had declined to comment on these very serious allegations lodged against him.

  25. Ordinary reasonable readers of the Tweet understood the Tweet to be stating these actual facts (expressly and/or impliedly) about Plaintiff Dennis Feitosa and not any fictional character Plaintiff allegedly created. The ordinary reasonable reader would not read these statements as rhetorical hyperbole or satire.

  26. Defendant, as evidenced by the prior threatening messages and the Confession, intended the ordinary reasonable readers of the Tweet to draw the above-referenced conclusions, inferences, and impressions from the Tweet. These conclusions, inferences, and impressions are defamatory *per se* because they accuse Plaintiff of the commission of a crime by involvement in pedophilic grooming of underage girls, which Plaintiff refused to comment on. Defendant never raised a finger to clarify or correct the Tweet to ensure readers knew it was a "joke" even though he knew that the public at large did not read the Tweet as a "joke", but rather as serious claims of criminal misconduct.

  27. Defendant, in fact, has admitted that he intended these conclusion, inferences, and impressions to be drawn from the Tweet, claiming that he did so to "mock" Plaintiff for allegedly making up fake "pedo" allegations against others. In doing so, Defendant admits that

he intended/endorsed the impression from the Tweet to be drawn that Plaintiff was accused of and had, in fact, engaged in pedophilia. Defendant also admitted that he knew that defamatory statements in the Tweet were false when they were made. Defendant, therefore, admits to making the Tweet with actual malice as to the falsity of the defamatory statements in the Tweet.

28. Because Defendant's Tweet and the defamatory allegations therein are accusations of criminal conduct (pedophilia and grooming), reputational injury to Plaintiff is presumed and his reputational injuries exceed $75,000.00. As discussed above, because Tweet was sent to over 2.5 million people, Plaintiff has suffered public shame, embarrassment, and humiliation due to the allegations of sexual crime. He has also lived in fear due to the threats of violence lodged against him as a result of the Tweet. Plaintiff has also had to spend time seeking to repair his reputation by publicly addressing the false allegations. Moreover, Plaintiff has suffered severe mental anguish from Defendant's false allegations of pedophilia/grooming. Plaintiff has had to undergo mental health treatment to cope with the public shame, embarrassment, humiliation, and fear resulting from the Tweet. In addition to seeking counseling, Plaintiff has had trouble sleeping and has anxiety at events in the social media/influencer industry due to the false allegations in the Tweet. Plaintiff has, therefore, mental anguish damages in addition to reputational injury that exceed $75,000.00.

29. Finally, Plaintiff will show by clear and convincing evidence that Defendant's Tweet was made with actual knowledge of the falsity of the defamatory statements, thereby entitling Plaintiff to exemplary/punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dennis Feitosa respectfully demands judgment against Defendant Daniel M. Keem:

(a) Awarding compensatory reputational damages in an amount to be proven at trial in excess of $75,000 plus interest;

(b) Awarding mental anguish damages in an amount to be proven at trial in excess of $75,000 plus interest;

(c) Awarding punitive/exemplary damages for Defendant's wrongful and malicious conduct; and

(d) Granting such other and further relief as the Court deems proper, together with costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: September 12, 2022              BOND, SCHOENECK & KING, PLLC

By: /s/ Heath J. Szymczak
   Heath J. Szymczak, Esq.
Attorneys for Plaintiff Dennis Feitosa
Avant Building, Suite 900
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7000
Email: jpoczek@bsk.com Email: hszymczak@bsk.com

12

14811629.1 9/12/2022