UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DENNIS FEITOSA,
                Plaintiff,

      v.

DANIEL M. KEEM,
                Defendant.

**DECISION AND ORDER**
22-CV-377S

## I.  INTRODUCTION

In this action, Plaintiff Dennis Feitosa alleges that Defendant Daniel Keem defamed him when he tweeted that "Def Noodles," Feitosa's YouTube persona, had been accused of grooming 12- to 15-year-old girls. Before this Court is Keem's motion to dismiss the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim. Because this Court finds both that it has jurisdiction and that Feitosa has stated a claim for defamation, it will deny Keem's motion to dismiss.

## II.  BACKGROUND

The following is a summary of facts as contained in Feitosa's amended complaint. This Court assumes the truth of the factual allegations contained therein. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff Dennis Feitosa is a "YouTube personality" and the creator of a YouTube show called "Def Noodles." (Amended Complaint, Docket No. 11, ¶ 7.) On Feitosa's YouTube channel, it clearly states, "My name is Dennis Feitosa and Def Noodles is a

show I created." (Id.) Feitosa posts content on Twitter and other social media accounts under the handle "Def Noodles." (Id.) People familiar with Feitosa understand that references to "Def Noodles" actually are to Feitosa himself. (Id.) Feitosa is domiciled in Los Angeles, California. (Id., ¶ 1.)

Defendant Daniel Keem is a YouTube personality who posts content under the name "Keemstar." (Id., ¶ 8.) Keem is domiciled in the Eastern District of New York.[1] (Id., ¶ 2.)  Feitosa and Keem are direct competitors in the "social media/influencer industry." (Id., ¶ 9.)

On March 31, 2021, Keem sent a direct message to Feitosa on Twitter related to Feitosa's relationship with a social media personality with whom Keem was unfriendly. (Id.) Keem wrote: "The day has come Dennis! And when it comes I want you to know it was me;" "what no comment?;" "WHY ARE YOU WORKING FOR ETHAN AND TRISHA?" (Id.) Then on April 2, 2021, Keem wrote, "Bro you are messing up so bad" and "I want a full written apology." (Id.) Feitosa alleges that in these messages, Keem was threatening Feitosa for his social media postings. (Id., ¶ 10.)

On May 21, 2021, Keem posted the following to his over 2.5 million Twitter followers and linked it to Feitosa's Twitter handle ("the Tweet"): "Def Noodles has allegedly groomed[2] girls from ages 12-15. Big YouTuber Source: 'Victims are scared of

_____

[1] The amended complaint alleges that Keem may be served with process at an address in Orchard Park, New York, a town located in the Western District of New York. (Docket No. 11, ¶ 2.)

[2] In common parlance, "grooming" is understood to be "a tactic where someone methodically builds a trusting relationship with a child or young adult, their family, and community to manipulate, coerce, or force the child or young adult to engage in sexual activities. The person grooming identifies vulnerabilities, erodes the child's or young adult's boundaries, and builds up to acts of sexual abuse and control while convincing the world around the child or young adult that they are safe in their care.  "What is Grooming."
https://www.google.com/url?sa=i&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=0CDMQw7AJahcKEwiwybadk9X8AhUAAAAAHQAAAAAQAg&url=https%3A%2F%2Fportal.ct.gov%2F-%2Fmedia%2FDCF%2FGTF-CJA%2FHB-6113%2FGrooming_Connecticut-Safe-Sport-Policy-Child-

him & wish to stay anonymous but may come forward soon' #DramaAlert." (Id., ¶ 10.)

A photograph of Feitosa appears below the text of the Tweet. (Id.) Under the text and the picture, Keem states, "Def Noodles has declined to give us a comment on these allegations made against him." (Id.)



(Id.)

According to the amended complaint, these statements are false: no girls had

Abuse-Prevention_Digital.pdf&psig=AOvVaw0doLh6Niqt-wRFH7uCaVzs&ust=1674269537465316. Accessed 2/16/2023.

alleged that Feitosa/Def Noodles had "groomed" them. (<u>Id.</u>, ¶11.) Nor had Keem sought comment from Feitosa/Def Noodles regarding the "allegations." (<u>Id.</u>, ¶ 12.) In fact, Keem blocked Feitosa on Twitter so that Feitosa could not respond publicly to Keem's claims. (<u>Id.</u>)

On May 22, 2021, a user responded to Keem's tweet saying, "[s]howing them girls his little noodles." (<u>Id.</u>, ¶ 13.) Another user posted "so @defnoodles might be a pedophile?" (<u>Id.</u>) Feitosa asserts that these reactions demonstrate that readers understood the Tweet as stating that he was involved in grooming underage girls for sex. (<u>Id.</u>, ¶ 14.) Feitosa received hundreds of harassing and threatening messages in response to the Tweet, including death threats. (<u>Id.</u>, ¶ 15.)

Nine months after posting the Tweet, Keem tweeted that the Tweet was a joke, intended to mock Feitosa for himself making false "pedo" allegations against others. (<u>Id.</u>, ¶¶ 26-27.)



(Id., ¶ 18.)

Feitosa alleges that he suffered public shame, embarrassment, and humiliation because of Keem's allegations that he committed a "sexual crime." (Id., ¶ 28.) He lives in fear due to the threats of violence and has suffered severe mental anguish. (Id.)

Feitosa filed his original complaint on May 19, 2022. (Docket No. 1.) On September 12, 2022, he filed an amended complaint. (Docket No. 11.) Keem moved to dismiss the amended complaint on September 26, 2022 (Docket No. 12), and Feitosa responded on October 11, 2022. (Docket No. 14.) After Keem's reply (Docket No. 15), this Court took

the motion under advisement without oral argument.

### III.   DISCUSSION

Feitosa brings one cause of action against Keem, for libel per se. Keem moves to dismiss Feitosa's complaint for lack of subject-matter jurisdiction and failure to state a claim.

### A.      Rule 12 (b)(1)

Keem moves to dismiss Feitosa's complaint pursuant to Rule 12 (b)(1), arguing that this Court lacks subject-matter jurisdiction over Feitosa's claim because he has not alleged damages in excess of $75,000.

Under 28 U.S.C. § 1332 (a)(1), federal courts have subject-matter jurisdiction over actions that arise between citizens of different states, if the amount in controversy exceeds $75,000. Chinese Ams. C.R. Coal., Inc. v. Trump, No. 21-CV-4548 (JGK), 2022 WL 1443387, at *3 (S.D.N.Y. May 6, 2022). Courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith," and dismissal is appropriate only if the legal impossibility of recovering above the threshold amount is "so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Tr. Co. of Chi., 93 F.3d 1064, 1070-71 (2d Cir. 1996) (internal quotation marks omitted).

To dismiss a complaint on the ground that the amount-in-controversy requirement

is not met, it must appear "to a legal certainty" that the requirement cannot be satisfied. Id. at 1070. "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir.1982); see also Tongkook Am. v. Shipton Sportswear Co., 14 F.3d 781, 785 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.").

Here, Feitosa alleges that he suffered reputational injuries and mental anguish damages exceeding $75,000. (Amended Complaint, ¶¶ 3, 28.) He alleges that due to the Tweet, he suffered public shame, embarrassment, and humiliation; lived in fear due to threats of violence; had to spend time seeking to repair his reputation; experienced severe mental anguish and underwent mental health treatment; had trouble sleeping; and experienced anxiety at events in the social media/influencer industry. (Id.)

In challenging jurisdiction, Keem argues that Feitosa's claims are insufficient because he does not allege that he lost YouTube subscribers or social media followers and does not ascribe a monetary value to the mental anguish he suffered. But these arguments do not meet Keem's burden of showing "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. Resolving any doubts in favor of Feitosa's pleadings, this Court finds that he has sufficiently alleged damages in excess of $75,000 such that jurisdiction under 28 U.S.C. § 1332 (a) is proper.

**B.    Rule 12 (b)(6)**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed.

R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This

examination is context-specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

## C.    Choice of Law

Because this is a diversity action between citizens of different states, this Court must first determine which state's defamation law applies.

Feitosa claims that California law governs his claim because he is a citizen of California, because Keem knew that he was a resident of California at the time of the Tweet, and because the brunt of the harm was felt in California. (Docket No. 11, ¶ 5.) Keem "assumes without conceding" that California law applies to Feitosa's claim, for the purpose of the instant motion. (Docket No. 12-1 at p. 11.) There is thus no present dispute regarding which law this Court should apply. "[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997). See also Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) (where "the parties' briefs assume that New York substantive law governs the issues, … such implied consent is, of course, sufficient to establish the applicable choice of law") (quoting Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 514 n. 4 (2d Cir. 2001)). This Court thus finds it appropriate to apply

California law on the basis of the parties' consent.

A choice-of-law analysis also supports this conclusion. "A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006). "In New York, ... the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998). An actual conflict of law exists if "the applicable law from each jurisdiction provides different substantive rules," id., and the differences "have a 'significant *possible* effect on the outcome of the trial,'" Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005) (quoting Simon v. Philip Morris, Inc., 124 F. Supp. 2d 46, 71 (2002)).

This Court finds no difference between the defamation laws of California and New York with a significant possible effect on the outcome of this case, at least at this stage. First, the elements of defamation in both states are similar enough to lead to the same outcome. In California, the tort of defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." Taus v. Loftus, 151 P.3d 1185, 1209 (Cal. 2007) (internal citations omitted). Under New York law, the elements of defamation are "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, that causes special harm or constitutes defamation per se." Khalil v. Fox Corp., No. 21 CIV. 10248 (LLS), 2022 WL 4467622, at *4 (S.D.N.Y. Sept. 26, 2022) (citing Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999)). This Court perceives no significant difference between these

standards, at least for the purpose of resolving the present motion.

Further, under both states' laws, it must be determined whether the Tweet is a factual assertion that is capable of being proven true, or a statement of opinion protected by the First Amendment. In both states, the entire context of the allegedly defamatory statement must be considered to resolve this issue. Compare Zervos v. Trump, 94 N.Y.S.3d 75, 88–89 (N.Y. App. Div. 2019) (in distinguishing fact from opinion a court must consider: "(1) whether the statements have a "precise meaning" that is "readily understood"; (2) whether the statements can be proven true or false; and (3) whether either the context in which the statements were made or the 'broader social context and surrounding circumstances [were] such as to signal ... readers or listeners that what [was] being read or heard [was] likely to be opinion, not fact.'") (internal citation omitted) with Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995) ("First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.") (Internal citations omitted). The analysis required appears to be substantially the same.

Given both the parties' consent and the absence of a conflict that could have a possible impact on the outcome of this motion, this Court will apply California law.

**D.    California Defamation Law**

As noted above, in California, the tort of defamation "involves (a) a publication that

is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." Taus, 151 P.3d at 1209. "The defamatory statement must specifically refer to, or be 'of and concerning,' the plaintiff." Jackson v. Mayweather, 217 Cal. Rptr. 3d 234, 252 (Cal. Ct. App. 2017), as modified (Apr. 19, 2017).

"Although defamation is primarily governed by state law, the First Amendment safeguards for freedom of speech … limit state law." Underwager, 69 F.3d at 365–66 (citing New York Times v. Sullivan, 376 U.S. 254, 264, 84 S. Ct. 710, 717, 11 L. Ed. 2d 686 (1964)). Statements that are not "provable as false," or statements that "cannot reasonably be interpreted as stating actual facts" are shielded by the First Amendment. Resolute Forest Prod., Inc. v. Greenpeace Int'l, 302 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017) (quoting Milkovich v. Lorain J. Co., 497 U.S. 1, 20, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1 (1990)).

To determine whether a statement contains a provable factual assertion or not, a court applying California law must perform a three-part analysis. First, the court must consider the statement "in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." Underwager, 69 F.3d at 366. Next, the court must examine "the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." Id. Finally, the court must inquire "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." Id.

"[W]here potentially defamatory statements are published in a ... setting in which the audience may anticipate efforts by the parties to persuade others to their positions by

use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." Summit Bank v. Rogers, 142 Cal. Rptr. 3d 40, 60 (Cal. Ct. App. 2012) (citing Gregory v. McDonnell Douglas Corp., 552 P.2d 425 (Cal. 1976); see also Art of Living Found. v. Does, 2011 WL 2441898, at *7 (N. D. Cal. Jun. 15, 2011) (holding that online statements that accused a foundation of "fraud," "abuse," and other misconduct "reflect[ed] poorly" on the foundation but were "too loose and hyperbolic" to state a defamation claim under California law).

"The defamatory character of language is measured 'according to the sense and meaning ... which such language may fairly be presumed to have conveyed to those to whom it was published.'" Sanchez v. Am. Media, Inc., No. CV202924DMGPVCX, 2020 WL 8816343, at *8 (C.D. Cal. Dec. 29, 2020) (quoting Balzaga v. Fox News Network, LLC, 93 Cal. Rptr. 3d 782, 794 (Cal. Ct. App. 2009)). A defamation claim may be decided as a question of law if no reasonable reader or listener "could have reasonably understood the statement in the alleged defamatory sense." Id.

Considering all the above factors, this Court finds that Feitosa has stated a claim for defamation. He alleges (1) that Keem published the Tweet, (2) that the Tweet is false, (3) that being called a "groomer" of 12-15 year old girls is defamatory, (4) that the Tweet was unprivileged, and (5) that the Tweet has a natural tendency to injure and he was in fact injured by the Tweet.

Keem first argues that Feitosa has not sufficiently alleged that the Tweet was "of and concerning" Feitosa because the Tweet referred to "Def Noodles," Feitosa's YouTube persona, and not Feitosa himself. In support of this argument, Keem submits statements by Feitosa that his character wears cat ears, lensless glasses, and UCLA t-shirts to create

a "whole like cat-boy cat-guy, whatever persona." (Docket No. 12-1 at pp. 6-7.) Keem submits evidence that Feitosa has stated that Def Noodles is a "character, who's a fictional cat … who just doesn't exist."  (Id.)

On a motion to dismiss, a court is limited to a consideration of the pleadings. When materials outside the pleadings are presented to the court, the court can choose to exclude them, or treat the motion as one for summary judgment and give the parties the opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12 (d).  Here, this Court will choose to exclude the extraneous materials Keem submits and will resolve his motion under the Rule 12 (b)(6) standard.

Turning to the amended complaint, Feitosa alleges that "persons familiar with Plaintiff [knew] and [understood] references to 'Def Noodles' as actually … referring to Plaintiff Dennis Feitosa." (Docket No. 11, ¶ 7.) On his YouTube channel, he states, "[m]y name is Dennis Feitosa and Def Noodles is a show I created." (Id.) He also alleges that "the viewing public do not view 'Def Noodles' as distinct from Dennis Feitosa." (Id.) Further, in the Tweet, the statement "Def Noodles has allegedly groomed girls from ages 12-15", accompanies a picture of Feitosa. (Id., ¶ 10.) This Court finds these allegations sufficient to plead that the Tweet was "of and concerning Feitosa."

Keem also argues that the Tweet is protected by the First Amendment because it is not a factual assertion capable of being proven true. Rather, he argues, in light of the Twitter context, the Tweet is clearly a joke, an example of hyperbolic and rhetorical speech that no reader familiar with the Twitter genre would have taken as stating provable facts. Keem explains that within the insular influencer world both Feitosa and Keem inhabit, "comedians, entertainers, gamers, and influencers often post salacious and

sometimes-controversial mocking content about each other and others with the hope of generating reactions among those who follow them." (Docket No. 12-1 at p. 8.) In support of this proposition, he submits Tweets where Feitosa himself appears to accuse Keem of domestic abuse, and online statements where Feitosa explains that "everything [he does] is a joke." (Docket No. 7-16 at p. 2; see generally Docket Nos. 7-5 through 7-12, 7-14 through 7-17.) Keem argues that, given his Tweet's placement within a war of words between these two influencers, his Tweet could not reasonably have been understood as conveying a factual assertion.

As noted above, on a motion to dismiss, a court is limited to a consideration of the pleadings. But because courts may resolve defamation claims as question of law if no reasonable reader or listener "could have reasonably understood the statement in the alleged defamatory sense," on motions to dismiss, courts examining the context of the statement sometimes look beyond the pleadings to determine whether a statement has the meaning attributed to it by the plaintiff. Balzaga, 93 Cal. Rptr. 3d at 793–94. For example, "when the alleged defamatory statement is contained in a headline, the headline must be read in conjunction with the entire article." Morningstar, Inc. v. Superior Court, 29 Cal. Rptr. 2d 547 (Cal. Ct. App. 1994). See also Moyer v. Amador Valley J. Union High Sch. Dist., 275 Cal. Rptr. 494 (Cal. Ct. App. 1990) (despite headline, article read in full context accurately reported the facts); Selleck v. Globe Int'l, Inc., 212 Cal. Rptr. 838 (Cal. Ct. App. 1985) (court must examine newspaper's headlines, caption and article as a whole to determine whether it is "reasonably susceptible of a defamatory meaning"). Similarly, when an allegedly defamatory statement is made as part of a television broadcast, courts will "examine the statement in context with the remainder of the news

report to determine if it has the meaning attributed to it by the plaintiff." Balzaga, 93 Cal. Rptr. 3d at 793 (citing Monterey Plaza Hotel v. Hotel Emps and Rest. Emps, 82 Cal. Rptr. 2d 15 (Cal. Ct. App. 1999)).

But here, unlike the cases cited above, Keem does not point to a discrete publication like a complete news article or a full broadcast that this Court could consult to shed light on the meaning of the Tweet. Rather, Keem submits his own selection of tweets and a link to a podcast interview to support his version of the context this Court should consider.

Keem's submissions are far broader than what courts normally consider in assessing a statement's context, let alone what courts consider on a motion to dismiss. They risk depriving Feitosa of a fair adjudication by asking this Court to consider an incomplete record. See Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) ("[W]hen a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record."). This Court therefore declines to consider the documents Keem submits and will only consider the face of the complaint.

Considering the facts alleged in the complaint, a reasonable reader could have understood the Tweet as alleging provable facts about Feitosa: that he had been accused of grooming 12-15 year old girls for sex, that victims existed, that he had been approached for comment, and that he had declined to comment. Keem's motion to dismiss on the grounds that the Tweet is protected by the First Amendment therefore fails at this stage.

For all these reasons, this Court finds that Feitosa has stated a claim for defamation. Keem's motion to dismiss will therefore be denied.

## IV.  CONCLUSION

Because this Court finds that Feitosa has sufficiently alleged an amount in controversy to claim federal jurisdiction and has stated a claim for relief, this Court will deny Keem's motion to dismiss.

## V.  ORDERS

IT HEREBY IS ORDERED, that Keem's Motion to Dismiss (Docket No. 12) is DENIED.

FURTHER, that Keem's answer is due 21 days after the entry date of this decision.

SO ORDERED.

Dated:        February 28, 2023
              Buffalo, New York

                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge

17