**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**DENNIS FEITOSA,**

**PLAINTIFF,**

v.

**DANIEL M. KEEM,**

**DEFENDANT.**

**ANSWER TO AMENDED COMPLAINT**

**CIVIL CASE NO: 1:22-CV-00377**

---

Daniel M. Keem ("Keem" or "Defendant"), by and through his attorneys, Harter Secrest & Emery LLP, responds through this Answer to the Amended Complaint ("Complaint") of Plaintiff Dennis Feitosa ("Feitosa" or "Plaintiff") as follows:

## NATURE OF THE ACTION

This action arises out of Defendant's entirely fabricated statements that underage girls accused Plaintiff of "grooming" Plaintiff's "victim", which gave the clear implication that Plaintiff was engaged in pedophilic activities or was the subject of accusations of engaging in pedophilic grooming. Defendant has since admitted these were complete fabrications.

**RESPONSE:** Denies the allegations contained in this section of the Complaint.

## PARTIES

1.      Plaintiff is a natural person domiciled in Los Angeles, California.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.      Defendant is a natural person domiciled in the Eastern District of New York. He may be served with process at 190 Curley Dr, Orchard Park, NY 14127.

**RESPONSE:** Admits the allegations contained in Paragraph 2 of the Complaint except denies that Keem is domiciled in the Eastern District of New York.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds seventy-five thousand dollars ($75,000), and the parties are citizens of different states, with Plaintiff being a citizen of California and Defendant being a citizen of New York.

**RESPONSE:** The allegations contained in Paragraph 3 of the Complaint contain legal conclusions to which no response is necessary. To the extent a response is required, Keem denies that this Court has subject matter jurisdiction over this action.

4.      Personal jurisdiction and venue are predicated upon 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) since Defendant is a resident of the Western District of New York.

**RESPONSE:** The allegations contained in Paragraph 4 of the Complaint contain legal conclusions to which no response is necessary; however, Keem does not specifically contest venue in this action.

## CHOICE OF LAW

5.      California substantive law applies to the claims brought by Plaintiff herein. First, both Plaintiff was a citizen of California at the time the defamatory statements were published. Second, Defendant had knowledge that Plaintiff resided in California when he made the statements. Therefore, Defendant knew the brunt of the harm would be felt in California.

**RESPONSE:** The allegations contained in Paragraph 5 of the Complaint contain legal conclusions to which no response is necessary. To the extent a response is required, Keem denies the allegations contained in this paragraph.

2

**BACKGROUND**

7.      Plaintiff is a popular YouTube personality who posts and posted content under the handles "Def Noodles". Plaintiff also posts and posted on his Twitter and other social media accounts under similarly titled handles. Despite using the handle "Def Noodles" and despite being referred to colloquially as "Def Noodles" as a nickname for his show titles, persons familiar with Plaintiff knew/know and understood/understand references to "Def Noodles" as actually and, in fact, referring to Plaintiff Dennis Feitosa. Moreover, on Plaintiff's YouTube channel, it clearly states that "My name is Dennis Feitosa and Def Noodles is a show I created." Plaintiff's Instagram and Twitter pages links viewers to the YouTube channel. In short, the listening/viewing public do not view "Def Noodles" as distinct from Dennis Feitosa anymore than [sic] they view "Mr. Beast", the world's leading YouTube personality, as distinct from Jimmy Donaldson, his real name.[1]

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth

of the allegations regarding Plaintiff's posts, accounts, and content, states that the referenced

admissions posted by Plaintiff speak for themselves, and denies the remaining allegations and

implications contained in Paragraph 7 of the Complaint.

8.      Defendant is a popular YouTube personality who posts content under the name "KEEMSTAR". Defendant also posts on his Twitter and other social media accounts. Defendant had over 2.5 million followers on Twitter at the time of the conduct complained of herein.

**RESPONSE:** Denies the allegations and implications of wrongdoing contained in

Paragraph 8 of the Complaint, except admits that Keem posts on YouTube and Twitter under the

name "KEEMSTAR".

9.      Plaintiff and Defendant are direct competitors in the social media/influencer industry. Defendant has a history of posting factual claims regarding the entertainment industry in addition to other types of non-factual postings. On March 31, 2021, after apparently taking issue with a perceived alliance between Plaintiff and another social media personality, Ethan Klein, whom Defendant was unfriendly with, Defendant sent the following direct messages to Plaintiff on Twitter:

---

[1] Paragraph No. 6 has been omitted numerically to mirror the error in numbering in the Amended Complaint.





**RESPONSE:** Denies the allegations and implications contained in Paragraph 9 of the Complaint, including Plaintiff's characterizations of the March 31, 2021 and April 2, 2021 direct messages, which speak for themselves, except admits that Keem direct messaged the above messages to Plaintiff on Twitter on or about March 31, 2021 and April 2, 2021.

10.     As is clear from the messages above, Defendant threatened "Dennis"–not a fictional character named "Def Noodles"—for the postings Plaintiff made on his social media. On May 21, 2021 on his verified Twitter account, Defendant made good on his profane threats and posted the following Tweet of and concerning Plaintiff the ("Tweet") to his over 2.5 million followers, which was hyperlinked directly to Plaintiff's Twitter handle, thereby pointing to Plaintiff, and no one else:



**RESPONSE:** Denies the allegations and implications contained in Paragraph 10 of the

Complaint, including Plaintiff's characterizations of the March 31, 2021 and April 2, 2021 direct

messages on Twitter, and the May 21, 2021 Tweet, which speak for themselves, except admits

that Keem direct messaged Plaintiff on Twitter on or about March 31, 2021 and April 2, 2021,

and posted the above Tweet to Twitter on or about May 21, 2021.

11.     These statements were complete and utter fabrications. There were no allegations by any girls (underage or not) that Plaintiff had "groomed" them or otherwise engaged in inappropriate conduct of a sexual nature.

**RESPONSE:** Denies the allegations and implications of intent or wrongdoing contained in Paragraph 11 of the Complaint, except admits that the Tweet was a joke that quoted and responded to numerous similar posts by the Def Noodles character about Defendant, and was part of the satirical environment and context of social media news and comedy that Plaintiff admittedly invites and acknowledges is not serious through his cat-like Def Noodles character.

12.     Moreover, contrary to Defendant's false claims, neither Defendant nor anyone acting on Defendant's behalf made any attempt to seek "comment" on the fabricated allegations. To the contrary, Defendant blocked Plaintiff on Twitter ensuring he would have no ability to publicly respond to Defendant's fabricated claims.

**RESPONSE:** Denies the allegations contained in Paragraph 12 of the Complaint.

13.     Those who read and commented on the Tweet clearly understood it as stating actual verifiable facts about Plaintiff. For example, the next day on May 22, 2021, a user with the Twitter handle "Memelin" responded to the Tweet and stated, "Showing them girls his little noodles". Another user with the handle "@ChrisMCYT" posted "so @defnoodles might be a pedophile?"

**RESPONSE:** Denies the allegations and implications contained in Paragraph 13 of the Complaint, including Plaintiff's characterization of third parties' tweets, which are incomplete, out of context, and not of and concerning Plaintiff.

14.     Plaintiff also received direct messages and tweets asking him to comment on the false allegations in the Tweet and expressing that they understood the Tweet to make the accusation that Plaintiff was the subject of allegations of grooming underage girls for sex and was involved in pedophilia. The day of the Tweet a user with the Twitter handle "alyssaxxy" tweeted "Hopefully MSM picks up on this. Can't have another pedo running around this platform".

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth that Plaintiff received direct messages about the Tweet, and denies the remaining allegations

contained in Paragraph 14 of the Complaint, including Plaintiff's characterization of third

parties' tweets.

15.     Other tweets called for an "official investigation" and to "believe the victims". But the truth was, there was nothing to investigate, and there were no victims – not even alleged ones. Plaintiff received hundreds of messages that were harassing, threatening, and even included death threats. No one perceived the Tweet to be referring to a fictional character, but an actual person—Plaintiff—who they believed was the subject of actual allegations of sexual crimes against minors. And even though Defendant knew this, he still allowed his lies to spread like wildfire around social media while remaining silent.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth

that Plaintiff received hundreds of messages, and denies the remaining allegations and

implications contained in Paragraph 15 of the Complaint, including Plaintiff's characterization of

third parties' tweets.

16.     Although Plaintiff tried to defend himself on his own accounts, his social media following was not as broad as Defendant's. His efforts were not able to ameliorate the harm done by Defendant's malicious disinformation campaign. As such, Plaintiff's reputation was injured *per se* because of false accusations of criminal conduct.

**RESPONSE:** The allegations contained in Paragraph 16 of the Complaint contain legal

conclusions to which no response is necessary.  To the extent a response is required, Keem

denies the allegations and implications contained in Paragraph 16 of the Complaint.

17.     Plaintiff suffered a *per se* reputational injury as a result of the false and defamatory Tweet.

**RESPONSE:** The allegations contained in Paragraph 17 of the Complaint contain legal

conclusions to which no response is necessary.  To the extent a response is required, Keem

denies the allegations and implications in Paragraph 17 of the Complaint.

8

18.    Apparently realizing that he was going to be sued for defamation, Defendant then engaged in an ill-fated and thinly veiled attempt to peremptorily argue that the Tweet everyone understood as a legitimate "report" regarding Plaintiff's "victims" of sex crimes. On February 5, 2022, he tweeted a confession wherein he admitted that the Tweet was a total fabrication (the "Confession"):



**RESPONSE:** Denies the allegations and implications of wrongdoing contained in

Paragraph 18 of the Complaint, including Plaintiff's characterization of the February 5, 2022

Tweet, which speaks for itself, except admits that Keem posted the above Tweet on Twitter on or

about February 5, 2022.

19.    So, after seeing responses to the Tweet that took the Tweet seriously, Defendant—nearly eight months later—issued the confession claiming "everyone" knew it was a joke. But Defendant knew that people did not read it as a joke as evidenced by the responses to the Tweet. Defendant did nothing to clarify or correct that false statements in the Tweet until many months later after the damage had been done. Moreover, in Defendant's Confession Tweet he admits that the original Tweet was of and concerning Plaintiff Dennis Feitosa and not a fictional person because the "he" who is taking the false allegations seriously cannot be a fictional character – it is clearly Plaintiff.

RESPONSE: Denies the allegations contained in Paragraph 19 of the Complaint.

20.    Not only that, but in the Confession, Defendant doubled down on the false claim that Plaintiff had "declined" to comment to Defendant on the false allegations. In doing so, Defendant left open the possibility that Plaintiff's failure to address the "joke" allegations might mean perhaps there was a kernel of truth to the false allegations.

RESPONSE: Denies the allegations contained in Paragraph 20 of the Complaint,

including Plaintiff's characterization of the February 5, 2022 Tweet.

21.    Although Defendant's Confession was a "jailhouse lawyer" attempt at immunizing himself from liability for defamation, in reality it constitutes conclusive evidence of his actual malice as to the truth of the Tweet along with the threatening messages Defendant sent prior to the Tweet.

RESPONSE: The allegations contained in Paragraph 21 of the Complaint contain legal

conclusions to which no response is necessary.  To the extent a response is required, Keem

denies the allegations contained in this paragraph.

22.    Plaintiff now brings this action to recover actual, compensatory, and exemplary/punitive damages against Defendant.

RESPONSE: Denies that Plaintiff is entitled to recover actual, compensatory, and

exemplary/punitive damages.

## FIRST CAUSE OF ACTION

### (Libel *per se*)

23. Plaintiff repeats the allegations in paragraphs "1" through "22" above.

**RESPONSE:** Keem repeats and realleges its responses to the allegations contained in

paragraphs 1 to 22 as if fully set forth herein.

24. As described above Defendant made false statements of fact expressly and/or impliedly as follows:

i. That there were actual underage girls in ages ranging from 12-15 who had accused Plaintiff of "grooming" them for illicit sexual purposes.

ii. These girls were "victims", which implied that wrongful conducted had, in fact, been committed against these girls by Plaintiff of a criminal, pedophilic, and sexual nature;

iii. These girls were "scared" of Plaintiff, suggesting that Plaintiff had threatened or coerced them into silence; and

iv. Plaintiff had declined to comment on these very serious allegations lodged against him.

**RESPONSE:** Denies the allegations and implications contained in Paragraph 24 of the

Complaint.

25. Ordinary reasonable readers of the Tweet understood the Tweet to be stating these actual facts (expressly and/or impliedly) about Plaintiff Dennis Feitosa and not any fictional character Plaintiff allegedly created. The ordinary reasonable reader would not read these statements as rhetorical hyperbole or satire.

**RESPONSE:** Denies the allegations contained in Paragraph 25.

26. Defendant, as evidenced by the prior threatening messages and the Confession, intended the ordinary reasonable readers of the Tweet to draw the above-referenced conclusions, inferences, and impressions from the Tweet. These conclusions, inferences, and impressions are defamatory *per se* because they accuse Plaintiff of the commission of a crime by involvement in pedophilic grooming of underage girls, which Plaintiff refused to comment on. Defendant never raised a finger to clarify or correct the Tweet to ensure readers knew it was a "joke" even though he knew that the public at large did not read the Tweet as a "joke", but rather as serious claims of criminal misconduct.

11

**RESPONSE:** Denies the allegations contained in Paragraph 26.

27.    Defendant, in fact, has admitted that he intended these conclusion, inferences, and impressions to be drawn from the Tweet, claiming that he did so to "mock" Plaintiff for allegedly making up fake "pedo" allegations against others. In doing so, Defendant admits that he intended/endorsed the impression from the Tweet to be drawn that Plaintiff was accused of and had, in fact, engaged in pedophilia. Defendant also admitted that he knew that defamatory statements in the Tweet were false when they were made. Defendant, therefore, admits to making the Tweet with actual malice as to the falsity of the defamatory statements in the Tweet.

**RESPONSE:** Denies the allegations contained in Paragraph 27.

28.    Because Defendant's Tweet and the defamatory allegations therein are accusations of criminal conduct (pedophilia and grooming), reputational injury to Plaintiff is presumed and his reputational injuries exceed $75,000.00. As discussed above, because Tweet was sent to over 2.5 million people, Plaintiff has suffered public shame, embarrassment, and humiliation due to the allegations of sexual crime. He has also lived in fear due to the threats of violence lodged against him as a result of the Tweet. Plaintiff has also had to spend time seeking to repair his reputation by publicly addressing the false allegations. Moreover, Plaintiff has suffered severe mental anguish from Defendant's false allegations of pedophilia/grooming. Plaintiff has had to undergo mental health treatment to cope with the public shame, embarrassment, humiliation, and fear resulting from the Tweet. In addition to seeking counseling, Plaintiff has had trouble sleeping and has anxiety at events in the social media/influencer industry due to the false allegations in the Tweet. Plaintiff has, therefore, mental anguish damages in addition to reputational injury that exceed $75,000.00.

**RESPONSE:** Denies the allegations contained in Paragraph 28.

29.    Finally, Plaintiff will show by clear and convincing evidence that Defendant's Tweet was made with actual knowledge of the falsity of the defamatory statements, thereby entitling Plaintiff to exemplary/punitive damages.

**RESPONSE:** Denies the allegations contained in Paragraph 29.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

This Court lacks subject matter jurisdiction because Plaintiff has no and can prove no damages.

### THIRD DEFENSE

Plaintiff's claim for damages is barred, as Plaintiff has not suffered any recoverable damage.

### FOURTH DEFENSE

Plaintiff's claim for punitive damages is barred under applicable New York and California law.

### FIFTH DEFENSE

Plaintiff's claim for damages is barred in whole or in part by Plaintiff's failure to comply with Cal. Civ. Code § 48a.

### SIXTH DEFENSE

Plaintiff's claim, and claim for damages, is barred in whole or in part because Defendant did not act with malice.

### SEVENTH DEFENSE

Plaintiff's damages, if any, were caused in whole or in part by the fault of Plaintiff or third parties, and he has multiple other causes for any and all financial and/or emotional harms he has allegedly suffered, all of which he has broadly placed at issue in this action.

### EIGHTH DEFENSE

Upon information and belief, Plaintiff brought this action in bad faith and with improper ulterior motives and not to seek any damages actually sustained, and all rights are reserved in that regard.

**NINTH DEFENSE**

Plaintiff's claim is barred in whole or in part by the doctrine of unclean hands because of, among other things, the many false, offensive, unconscionable, and otherwise improper posts, comments, and statements he and his cat-like character made about Keem.

**TENTH DEFENSE**

Plaintiff's claim is barred in whole or in part because the Tweet was not of and concerning Plaintiff.

**ELEVENTH DEFENSE**

Defendant's statements-at-issue are protected by the First Amendment of the Constitution of the United States.

**TWELFTH DEFENSE**

Plaintiff's claim is barred in whole or in part because Defendant retracted the Tweet.

**THIRTEENTH DEFENSE**

All allegations and implications of wrongdoing and causation are denied and Keem reserves the right to amend or add any and all defenses that become available during discovery, including the right to assert counterclaims against Plaintiff regarding falsities, motives, and improper attempts to interfere with Keem's Constitutional and other rights.

WHEREFORE, defendant Keem requests an order dismissing plaintiffs' Complaint in its entirety and such further relief as this Court deems just and proper.

14

Dated:    March 21, 2023                    **HARTER SECREST & EMERY LLP**


                                            By:   s/ Sheldon K. Smith
                                                  _____
                                                  Sheldon K. Smith, Esq.
                                                  Jeffrey A. Wadsworth, Esq.
                                                  Caitlin F. Kireker, Esq.
                                                  *Attorneys for Defendant Daniel M. Keem*
                                                  50 Fountain Plaza, Suite 1000
                                                  Buffalo, New York 14202
                                                  Telephone: (716) 853-1616
                                                  Fax: (716) 853-1617
                                                  ssmith@hselaw.com


TO:     Heath J. Szymczak, Esq.
        BOND, SCHOENECK & KING, PLLC
        *Attorneys for Plaintiff Dennis Feitosa*
        Avant Building, Suite 900
        200 Delaware Avenue
        Buffalo, New York 14202
        Telephone: (716) 416-7000
        Email: hszymczak@bsk.com

15